```
              IN THE DISTRICT COURT OF THE UNITED STATES
                 FOR THE DISTRICT OF SOUTH CAROLINA
                      ANDERSON/GREENWOOD DIVISION
```

| | |
|---|---|
| Mary Elizabeth Patterson, ) | Civil Action No. 8:07-1602-HFF-BHH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Michael J. Astrue, ) | **OF MAGISTRATE JUDGE** |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Mary Elizabeth Patterson, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for Supplemental Security Income ("SSI") under the Social Security Act.

## RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

The plaintiff was 42 years old as of the Administrative Law Judge's (ALJ) decision. (R. at 50.) She has a tenth grade education, and has worked as a custodian and housekeeper. (R. at 65, 67-74, 186, 216-17.)

The plaintiff protectively filed her application for SSI on February 9, 2004, alleging disability since January 1, 1996, due to seizure disorder and asthma/allergies. (R. at 11, 49-51.) The plaintiff's application was denied initially and upon reconsideration. (R. at 24-28, 313-33.) At an administrative hearing held on September 21, 1005 (R. at 180-225), an ALJ found that plaintiff retained the ability to perform unskilled sedentary jobs existing in

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

significant numbers in the national economy and, therefore, that she was not disabled. (R. at 15.) The Appeals Council denied plaintiff's request for a review of the ALJ's decision, (R. at 3-5), thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.

The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2. The claimant's asthma, seizure disorder, and carpal tunnel syndrome (CTS) are considered "severe" based on the requirements in the Regulations 20 CFR § 416.920(c).

3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

4. The claimant's assertions regarding her limitations are not substantiated by the total evidence of record and are not credible.

5. [omitted]

6. The claimant retains the residual functional capacity to perform work with restrictions that require: only routine, repetitive tasks involving simple, 1-2 step instructions; no lifting or carrying greater than 10 pounds occasionally and 1-2 pounds frequently; no climbing or balancing; no exposure to excessive dust fumes, gases, odors, extremes of temperature or humidity; no heights, hazardous machinery operation of automotive equipment; and no repetitive use of the right, dominant arm.

7. The claimant is unable to perform any of her past relevant work (20 CFR § 416.965).

8. The claimant is a "younger individual" (20 CFR § 416.963).

9. The claimant has "a limited education" 20 CFR § 416.964).

10. The claimant's acquired skills are not transferable due to the residual functional capacity restriction of simple, routine work activity. (20 CFR § 416.968).

11. The claimant has the residual functional capacity to perform a significant range of sedentary work (20 CFR § 416.967).

12. Although the claimant's exertional limitations do not allow her to perform the full range of sedentary work, using Medical-Vocational Rule 201.25 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform, including the sedentary, unskilled job of surveillance monitor.

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.920(g)).

**APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform

alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966). Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

**DISCUSSION**

The plaintiff contends that the ALJ erred in failing to find her disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) failing to resolve a conflict between her residual functional capacity ("RFC") and the Dictionary of Occupational Titles' description of the job

recommended by the Vocational Expert ("VE"); (2) failing to find her carpel tunnel syndrome a severe impairment; (3) failing to give proper weight to the opinions of her treating physician; and (4) failing to properly assess her subjective complaints of pain. The Court will address each alleged error in turn.

**I.     CONFLICT WITH THE DICTIONARY OF OCCUPATIONAL TITLES**

The plaintiff argues that the job of surveillance systems monitor, identified by the VE as a job she could perform, requires a greater reasoning level than the ALJ found the plaintiff had. Specifically, the plaintiff emphasizes that the ALJ found the plaintiff limited to "[o]nly routine, repetitive tasks involving simple, 1-2 step instructions . . . ." ( R. at 13, 16.) The plaintiff rightly argues that an ability to perform only 1 or 2 step instructions correlates with a reasoning development level of **1**. (Pl. Ex. 1, Dictionary of Occupational Titles, ("DOT") Revised, U.S. Department of Labor, 1991 WL 688702.) By contrast, the plaintiff argues that surveillance systems monitor requires a reasoning level of **3**. DOT 379.367-010. The plaintiff contends, therefore, that the ALJ was in error to conclude that the plaintiff could perform that job.

Occupational evidence provided by a VE generally should be consistent with the occupational information provided by the DOT.   The ALJ has a duty to ask the VE to identify and explain any conflicts with the DOT. *See* SSR 00-4p. The relevant portion of SSR 00-4p reads as follows:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency. Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-4p.  Accordingly, the ALJ must elicit a reasonable explanation for any "apparent unresolved conflict" between the VE evidence and the DOT before relying on the VE to support a determination about whether the claimant can perform any work.  *See id.*  A VE's conflicting testimony can only be used if the ALJ finds that it is based on "other reliable publications" or the expert's own "experience in job placement or career counseling."  SSR 00-4p, 2000 WL 1898704 at *2; *see also Fisher v. Barnhart*, 181 Fed. Appx. 359, 365-66 (4th Cir. 2006) (Unpublished).

On its face there appears to be a conflict between what the plaintiff is capable of performing and what the recommended job requires, which necessitated explanation from the VE.  *See* SSR 00-4p.  No specific discrepancies between the plaintiff's reasoning level and the reasoning level required by the surveillance monitor job was ever discussed.

The defendant argues, however, that the VE accounted for the plaintiff's reasoning level but still concluded that she could perform the surveillance systems monitor.  Specifically, the defendant argues that based on the vocational expert's testimony, the ALJ concluded that the plaintiff's restriction to "routine, repetitive tasks involving simple 1-2 step instructions" would not preclude her from performing the unskilled job of surveillance systems monitor.

The Court, however, has reviewed the VE's testimony and it cannot be concluded that the VE was specifically aware of the conflict between the reasoning level of the plaintiff and that required by the surveillance job such that his recommendation of the job can be assumed to have involved a necessary resolution of that conflict.  It is undisputed that the ALJ included the limitation of simple 1-2 step instructions in his hypothetical question to the ALJ, to which the ALJ responded that the plaintiff could perform the job in question.  (R. at 218, 219.)   Moreover, the defendant emphasizes that the VE expressly limited the plaintiff "to the very basics of monitoring."  (R. at 223.)

As stated, however, the VE never expressly discussed whether the plaintiff's inability

to perform more than 1-2 step instructions was compatible with the monitor position, which the VE acknowledged required at least a reasoning level of 2. (R. at 223.) It would be speculation on the Court's part to assume that the VE realized the conflict and necessarily considered it.

The defendant further contends that the plaintiff has confused the "general education development" reasoning level description in the DOT, for the surveillance job, for the more controlling "specific vocational preparation" level. The former measures "those aspects of education (formal and informal) which are required of the worker for satisfactory job performance. . . . Ordinarily, such education is obtained in elementary school, high school, or college . . . [and it] may be obtained from experience and self-study." DOT, App. C, § III. The latter reflects the "amount of lapsed time required by a typical worker to learn the techniques, acquire information, and develop the facility needed for average performance in a specific job-worker situation." DOT, App. C, § II. The defendant argues that where the general educational requirements seem to exceed the requirements of unskilled work, it is the regulatory framework, in particular the specific vocational preparation level, which controls and ultimately determines the skill level of the job for purposes of the ALJ's decision. *See* SSR 00-4p. By extrapolation, therefore, the defendant contends that the surveillance job should only be considered to require a reasoning level of 2.

As the plaintiff points out, however, the defendant's argument fails to resolve the alleged error. As discussed, the ALJ necessarily concluded that the plaintiff was limited to a reasoning level of 1. So even if the specific vocational level controls, there endures an unresolved conflict between the ALJ's findings and the DOT's description of the job recommended. The Court will not resolve it.

It is recommended, therefore, that the case be remanded so that a VE can give testimony as to whether the plaintiff can perform the recommended job considering her inability to do more than perform work requiring 1-2 step instructions.

The plaintiff has also argued that the VE did not provide any testimony as to whether or not the presence of 200 surveillance systems monitor jobs in the State of South Carolina constituted the presence of that job in "significant numbers." *See* 42 U.S.C. § 423(d)(2)(A). The Fourth Circuit, however, has suggested in *dicta* that 110 jobs in a region would likely constitute a significant number. *See Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) (stating, "[w]e do not think the 110 [regional] jobs testified to by the vocational expert constitute an insignificant number. . . ."). Moreover, the "number of jobs that contributes to the 'significant number of jobs' standard looks to the national economy - not just a local area." *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999); 20 C.F.R. § 416.960(c)(1) ("other work . . . must exist in significant numbers in the national economy . . ."). To that end, the VE testified that 28,000 surveillance jobs appeared in the national economy. (R. at 219.) This testimony was substantial evidence for the ALJ to conclude that the surveillance job appeared in significant numbers. *See, e.g., Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997) (finding 650 surveillance systems monitor jobs in the state and 30,000 nationally constituted a significant number).

## II.   CARPEL TUNNEL SYNDROME AND TREATING PHYSICIAN

The plaintiff's next two assignments of error relate to the plaintiff's carpel tunnel syndrome and the ALJ's consideration of his treating physician's opinion in that regard. First, the plaintiff contends that the ALJ erred in not finding that her carpel tunnel syndrome was a severe impairment. Second, the plaintiff contends that the ALJ erred in not giving controlling or significant weight to the opinion of the plaintiff's treating physician that the plaintiff's carpel tunnel syndrome affected her ability to reach, handle, feel, push, pull; caused numbness and tingling; and made her sometimes drop items or fail to grip items properly. (R. at 147, 168, 172, 173.)

The Court agrees with the defendant, however, that any error by the ALJ in failing to find the plaintiff's carpel tunnel syndrome to be severe or in his consideration of the treating physician's opinion is harmless. *See Mickles v. Shalala,* 29 F.3d 918, 921 (4th Cir.

1994) (affirming denial of benefits where the ALJ erred in evaluating claimant's pain because "he would have reached the same conclusion notwithstanding his initial error"). Specifically, the job of surveillance systems monitor job does not require any significant reaching, handling, fingering, or feeling. *See* DOT 379.367-010 (reaching, handling, fingering, and feeling "**Not present - Activity or condition does not exist**" (emphasis added)). Accordingly, the limitations imposed on the plaintiff by that condition, as recommended by his treating physician, would not eliminate the surveillance monitor job even if they had been included.     The plaintiff argues that inclusion of limitations related to the alleged impairment remain material because the VE testified that the plaintiff could perform no work in the national economy were she to have "***no functional use*** of the dominant right upper extremity . . . ." (R. at 220 (emphasis added).) No evidence of record, however, including the opinion of the plaintiff's own treating physician, suggests that the plaintiff has "no functional use" of her right arm. In fact, her treating physician expressly concluded that she could occasionally lift 5-10 pounds. (R. at 161.) While her treating physician found that the plaintiff was limited in regards to reaching, handling, feeling, and pushing/pulling, nowhere did she find that the plaintiff lacked all functionality in those attributes. *Id*. at 162. Thus, the VE's testimony would not suggest any absence of work in the national economy even were the Court to ascribe the treating physician's opinion the fullest weight possible.

The plaintiff further argues that a violation of the Treating Physician Rule is not harmless because the only occupation identified by the VE, surveillance systems monitor, is not a valid occupation pursuant to the Dictionary of Occupational Titles and Social Security Ruling 00-4p and contradicts the treating physician's opinion. (Pl. Reply at 4-5.) The Court may be misconstruing the plaintiff's position but the argument seems to miss the mark. The Court has agreed with the plaintiff that there is an unresolved conflict between the DOT's description of the surveillance job and the plaintiff's RFC. If on remand, a VE testifies that such a conflict cannot be resolved, then the ALJ would presumably find the

plaintiff disabled and the issues related to her carpel tunnel syndrome would be moot. Likewise, were the VE to testify that the surveillance job is, in fact, compatible with the plaintiff's RFC, then the carpel tunnel syndrome still remains immaterial insofar as the surveillance job does not require use of the right extremity beyond what the plaintiff is capable, as limited by even her own treating physician. In either circumstance, the fact that only one job has been recommended by the VE, whether accurately or not, never elevates the harmfulness of any error related to the plaintiff's carpel tunnel syndrome to a material extent.

It should be noted that notwithstanding the plaintiff's complaint that the ALJ failed to include the extent of her limitations resulting from carpel tunnel syndrome, the ALJ expressly found that the plaintiff was limited to "no lifting or carrying greater than 10 pounds occasionally and 1-2 pounds frequently . . . and no repetitive use of the right, dominant arm." (R. at 16.)  These limitations were expressly communicated to the VE  (R. at 219) and were based, in part, on the ALJ's decision to give the opinion of the plaintiff's treating physician, "great weight" (R. at 12).

### III.    PLAINTIFF'S CREDIBILITY

Lastly, the plaintiff contends that the ALJ did not properly assess her subjective complaints of pain and difficulty associated with her carpel tunnel syndrome and seizures. For the reasons recited above, any error the ALJ made in assessing the plaintiff's pain related to her carpel tunnel syndrome was harmless.

Concerning the ALJ's assessment of the plaintiff's subjective allegations of seizures, the Court is constrained to find substantial evidence existed for his conclusion. Federal regulations, 20 C.F.R. §§ 416.929(a) and 404.1529(a), provide the authoritative standard for the evaluation of pain in disability determinations. *See Craig v. Chater*, 76 F.3d 585, 593 (4th Cir. 1996). Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is **a two-step process**." *Id.* at 594 (emphasis added). First, "there must be objective medical evidence showing the existence of a medical

impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 591 (quotation and emphasis omitted). This threshold test "does not . . . entail a determination of the 'intensity, persistence, or functionally limiting effect' of the claimant's asserted pain." *Id.* at 594. Second, and only after the threshold inquiry has been satisfied, "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." *Id.* at 595. When the ALJ fails to "expressly consider the threshold question" and instead proceeds "directly to considering the credibility of [the] subjective allegations of pain," remand is warranted. *Id.* at 596.

It is critical to proceed through the steps in order, because "once objective medical evidence establishes a condition which could reasonably be expected to cause pain of the severity a claimant alleges, those allegations may not be discredited simply because they are not confirmed by objective evidence of the severity of the pain . . . ." *Id.* at 593. Said differently, once an ALJ concludes that an impairment could reasonably be expected to produce the pain alleged, he ought to view any inconsistency or defect in the plaintiff's subjective testimony through a more discriminating lense because the plaintiff's subjective allegations, at that point, are consistent with the objective expectations.

Although in cursory fashion, the ALJ did conclude, at the first step, that the plaintiff's impairments could reasonably be expected to produce the limitations alleged. (R. at 13.) The ALJ rejected, however, the plaintiff's representations as to the persistence and intensity of her seizures, insofar as he found that the evidence contradicted her testimony that she had seizures 3-4 times per month (R. at 187).[2]  Specifically, the ALJ repeatedly noted that the medical records indicated that the plaintiff's seizure disorder was "stable" on medication. (See, e.g., R. at 143-49.)  The plaintiff admits as much. (Pl. Reply at 8.)

The plaintiff contends, however, that the mere reference to the disorder in the physician's notes necessarily implies that the plaintiff was having seizures at a rate

---

[2] The ALJ actually misstated the plaintiff's testimony suggesting that she had indicated that seizures occurred 3-4 times per day. (R. at 12.)

11

consistent with her testimony. The Court disagrees that such implication follows from numerous notes indicating simply that the disorder was "stable" (see, e.g., R. at 143-49.); the Court certainly rejects that the ALJ was constrained to so conclude. The ALJ was certainly justified in finding that medical notes, emphasizing the stability of the plaintiff's condition, were incompatible with testimony that she was having seizures even 3 to 4 times per month. Whether or not the plaintiff might arrive at a different conclusion from the same evidence is of no moment. *See Blalock*, 483 F.2d at 775.

There is no error in this regard.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, the Court cannot conclude that the ALJ's decision to deny benefits was supported by substantial evidence in all respects, although it is in some. It is, therefore, RECOMMENDED, for the foregoing reasons, that the Commissioner's decision be reversed and remanded under sentence four of 42 U.S.C. § 405(g) to the Commissioner for further proceedings as set forth above. *See Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

May 16, 2008
Greenville, South Carolina